ALBERT A. BOWMAN AND MARY L. BOWMAN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE,Respondent
Bowman v. Commissioner
Docket No. 25498-91
United States Tax Court
T.C. Memo 1993-88; 1993 Tax Ct. Memo LEXIS 95; 65 T.C.M. (CCH) 2069; March 15, 1993, Filed *95 Albert A. Bowman, pro se. For respondent: Mildred M. Moon. POWELL
POWELL
MEMORANDUM OPINION POWELL, Special Trial Judge: Respondent determined that deficiencies and additions to tax were due from petitioners as follows: Addition to Tax
Year
Deficiency
Sec. 6651(a) [1]
1985
$ 862.00
$ 215.50
1986
$ 979.00
$ 244.75
1987
$ 768.00
$ 165.25
1988
$ 302.00
$ 74.00
Petitioners timely filed a petition with this Court. At the time that the petition was filed, petitioners resided in Philadelphia, Pennsylvania. The facts are as follows. During the years before the Court, petitioner Albert Bowman was unemployed and petitioner Mary Bowman was employed as an accountant by a firm known as ARA Services. She received income from ARA in the amounts of $ 15,773.40, $ 16,870.40, $ 21,145.17, and $ 24,152 for each of the respective years. Petitioners *96 did not file timely returns for any of the years before the Court. Petitioner Albert Bowman testified that they had been advised by a religious and/or social group that they did not need to file tax returns because they were exempt from taxation under section 501(c)(3). At sometime during 1989, respondent began an examination of petitioners' income tax liabilities for 1985 through 1988. Petitioners then filed returns for each of the years in question. On these returns, petitioners reported Mrs. Bowman's salary. On the returns for 1985, 1986 and 1987, petitioners claimed child care credits of $ 864, $ 832, and $ 768, respectively. On the 1985 return, petitioners claimed a deduction for charitable contributions in the amount of $ 200. On their 1986 return, petitioners claimed a theft loss in the amount of $ 8,231.30 In the notices of deficiency, respondent disallowed the child care credits claimed for 1985, 1986 and 1987, $ 100 of the $ 200 charitable contribution claimed for 1985 and the theft loss deduction claimed on the 1986 return. In addition, respondent determined that petitioner Mary Bowman received a distribution from a retirement plan in the amount of $ 1,209 which *97 petitioners did not report on their 1988 return. Petitioners concede the adjustment to the 1988 return. Child Care Credit
Section 21(a) allows a credit for a "percentage of the employment-related expenses * * * paid by such individual during the taxable year", if the individual maintains a household which includes "one or more qualifying individuals". A qualifying individual includes a dependent of the taxpayer who is under the age of 15. Sec. 21(b)(1)(A). An "employment-related expense" is defined, inter alia, to mean the amounts paid for the care of a qualified individual, "only if such expenses are incurred to enable the taxpayer to be gainfully employed for any period for which there are 1 or more qualifying individuals". Sec. 21(b)(2)(A). Petitioner Albert Bowman testified that petitioners paid a grandmother of Mrs. Bowman approximately $ 256 a month to take care of their two children. The children were age 6 and 11 during 1985. The grandmother is now deceased, and petitioners do not have any cancelled checks or other evidence supporting that such payments were made. Respondent, while disputing that the payments were made, also contends that petitioners have failed *98 to establish that the expenses were employment related within the meaning of section 21(b)(2)(A). Respondent reasons that since Mr. Bowman was unemployed during this period, he was available to take care of the children and, therefore, the expenses were not "incurred to enable the taxpayer to be gainfully employed." We do not believe that it is necessary to reach respondent's argument under section 21(b)(2)(A). It is simply inconceivable that petitioners would have paid over $ 9,000 over 3 years to the grandmother and that there would be no record of the payments. It may be understandable that the payments were made in cash. Petitioners, nonetheless, would have been required to file information returns reporting the payments for tax purposes, and certainly those returns should have been available to help substantiate that such payments were made. Furthermore, and apart from respondent's argument under section 21(b)(2)(A), it is difficult to comprehend the reason that petitioners would have needed to make such payments every week when Mr. Bowman was not employed. To be sure, there may have been some occasion when he was not available, but, for a family of limited means, such *99 an expense seems highly unlikely. We sustain respondent's determination. Charitable Deduction
Petitioners offered no evidence that they made charitable contributions during 1985 in an amount larger than that allowed by respondent. Theft Loss
Petitioners contend that they suffered a loss in the amount of $ 8,231.30 from the theft of their household furniture during 1986. Mr. Bowman testified that the mortgage on their house was foreclosed and the property was purchased by Herbert Neuman and Arthur Lerner in 1985. On May 22, 1985, Messrs. Neuman and Lerner undertook to gain possession of the property. They obtained a Writ of Possession that was executed by the Office of the Sheriff of Philadelphia. Messrs. Neuman and Lerner then hired John Gamble to move the contents of the house. Up to this point the parties are apparently in agreement. This agreement, however, ends sharply. In a civil action filed against Messrs. Neuman, Lerner, Gamble and the City of Philadelphia, petitioners contended that Mr. Gamble stole the property. Mr. Gamble, however, contended in his sworn answer that he secured the items in a warehouse, paid the storage for an appropriate period, and *100 gave petitioners the receipt. While it is not clear exactly what happened in the lawsuit, petitioners agree that no judgment was obtained against any of the defendants. Respondent contends that, if there were a loss, it was not a theft loss but rather a loss by petitioners' abandonment of the property. Section 165(a) allows a deduction for losses "sustained during the taxable year and not compensated for by insurance or otherwise." Section 165(c) limits such a deduction for individuals to losses incurred in a trade or business or incurred in transaction for profit or losses arising from "fire, storm, shipwreck, or other casualty, or from theft." The Court is not satisfied that a loss deductible under section 165(c) occurred because we do not believe that there was a theft of the property. It appears to the Court that while petitioners initially may have been forcibly separated from their property, the duration of that separation was in their hands. See Mullins v. Commissioner, T.C. Memo. 1974-204. We sustain respondent's determination on this issue. Addition to Tax
Section 6651(a)(1) provides that in the case of a failure to file a return *101 timely an addition to tax shall be imposed "unless it is shown that such failure is due to reasonable cause and not due to willful neglect". Petitioners contend that they were told that they were tax exempt under section 501(c)(3) of the Code. Section 501(c)(3) relates to corporations that are "organized and operated exclusively for religious, charitable, scientific, testing for public safety, literary, or educational purposes". While reliance on advice as to whether a return must be filed, may constitute reasonable cause, the person giving that advice must be competent to render that advice and the reliance on that advice must be reasonable. See United States v. Boyle, 469 U.S. 241, 250 (1985). Petitioners have not demonstrated that the person or persons giving the advice were competent to give such advice. Furthermore, by the very nature of the advice given, petitioners' reliance on that advice was not reasonable. Decision will be entered for respondent. Footnotes
1. All section references are to the Internal Revenue Code in effect for the years in issue. Rule references are to the Tax Court Rules of Practice and Procedure.↩